ROBERT K. JONES, Appellant, v. ADDESHA CORPO-RATION, A Nevada Corporation; WILLIAM L. DAVIS, and FLOYD E. LOVE, Individually and as Co-Partnership, Respondents.

No. 14763

October 4, 1984                           688 P.2d 298

*Robert R. Hager,* Reno, for Appellant.

*Thomas F. Eck,* Carson City, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from a judgment quieting title in two five-acre mill site claims in Humboldt County.

The mill sites in question were originally located and perfected by Elmer and Marion Gordon in May, 1964. In May, 1980, the Gordons entered into an installment sales agreement to sell the mill sites to the respondent, Addesha Corporation, upon the payment of $35,000.00. Both parties have stipulated that the Gordon's title to the mill sites was valid at the time that this contract was entered into.

Under the administrative regulations promulgated by the Bureau of Land Management (BLM), upon the transfer of any part of a mining claim, including an unpatented mill site, the transferee must file with the BLM within 60 days, the serial number of the assigned claim and the name and address of the person to whom the claim was transferred. 43 C.F.R. 3833.3(a). Failure to file will not void the claim, but merely subjects the claim to be contested by the BLM without personal notice to the transferee. 43 C.F.R. 3833.5(d). It appears to be undisputed that Addesha failed to file the required information with the BLM.

On June 24, 1981, the Nevada state office of the Bureau of Land Management issued an administrative decision declaring the mining claims to be abandoned and void for failure to file annual information required by federal law.[1] Because Addesha had not filed a notice of transfer, it was not personally notified of the decision. Instead, the notice was sent to the last known owners of record, Elmer and Marion Gordon. The notice stated that the BLM decision could be appealed for up to 30 days after it was received.

Upon receiving notice of the BLM decision, Elmer Gordon relocated two mill site claims on the exact same land. On July 24, 1981, the day that the 30-day period of appeal lapsed, Gordon filed two certificates of location on the contested sites. Gordon never notified Addesha of the BLM decision.

After perfecting the new claims Sellers proceeded to resell the relocated claims to appellant Jones. Although Jones had been aware of Addesha's interests in the mill sites under the installment sales contracts, Jones stated that he didn't believe that Addesha had any present interest in the claims because of the BLM decision. Nevertheless, on August 15, 1981, Jones purchased both the Addesha contract as well as whatever interest Gordon had in the relocated mill sites for $25,000.00.[2] On

---

[1]Federal law requires the owner to file annually with the BLM a notice of intent to hold the mining claim or a detailed report of the assessment work performed on the claim within the past year. 43 U.S.C. § 1744(a)(1); 43 C.F.R. 3833.2-1. Under 43 U.S.C. § 1744(c) the failure to file "shall be deemed conclusively to constitute an abandonment of the mining claim or mill or tunnel site by the owner. . . ." *See also* 43 C.F.R. 3833.4.

[2]At the time of the August 15th sale to Jones, $25,000.00 remained outstanding on the Addesha installment contract.

the same day that Gordon sold his interests to Jones, Gordon deposited the August check from Addesha.

Addesha was never notified by Gordon of either the BLM decision or the sale to Jones. Addesha was therefore not aware that the monthly payments should be made to Jones. Addesha first became concerned with title problems to the claims when it received a notice of default from Jones in late August.

On August 25, 1981, Jones sent a Notice of Default and Election to Terminate the Contract to Addesha. The notice informed Addesha that Jones had succeeded to the interest of Gordon under the original contract and that certain provisions of that contract had been breached. On September 4, 1981, Jones recorded a Notice of Failure to Cure Default and Election to Terminate Agreement and to Repossess the Gordon mill sites.

Jones appeals from a judgment by the trial court quieting title to the mill sites in favor of Addesha. Jones contends that the BLM decision declaring the mill sites to be void extinguished all legal and equitable title in the claims and in turn allowed the Gordons to re-establish new title, free and clear of Addesha's interests. We disagree.

In construing the installment contract entered into by Addesha and the Gordons, the district court found that the duty to file the required annual information with the BLM rested with the Gordons. We agree with the district court's interpretation. Under the agreement, the Gordons were expressly obligated to convey legal title, free and clear of all encumbrances, upon Addesha's completion of the purchase price. Since the Gordons were required to transfer legal title to Addesha, it is implied in the agreement that they are obligated to maintain such title until the time for transfer has matured. The mere fact that they were for a brief time unable to convey does not relieve them of their ultimate contractual obligation to convey once title was re-established.

It is unnecessary to decide whether Addesha's equity could be cut off by a bona-fide purchaser for value, as Jones cannot conceivably qualify for this status. The only real issue, then, is whether Addesha was in default in its obligations to the Gordons and to Jones as the Gordon's successor. This issue was decided by the trial court in a manner favorable to Addesha, and we affirm the trial court's decision.

Under the language of the sales contract, there is only one instance where the agreement may be terminated because of default—non-payment of rent. The original contract with Addesha provides that if the payments are not made on time

the Sellers may send Addesha a written notice of default and that Addesha has 10 days within which to cure any default. If it is not cured, the seller may either declare the contract in default and retake possession or sue for the amount of that payment. There is no acceleration clause.

Although Elmer Gordon, one of the sellers, testified that Addesha was consistently 12 to 14 days late with its payments, the contractual procedure for declaring the contract in default and terminating the agreement was not complied with by either the Gordons or by Jones. First, the August 25, 1981 Notice of Default does not claim that Addesha failed to make its monthly payments, only that it owed $2,000 in late penalties. Nevertheless, even if it had failed to make timely payment, a default could not properly be declared. Addesha apparently made its August payment on August 10, 1981. The notice of default was sent on August 25, 1981. Since the notice allows Addesha 10 days within which to cure, and since the payment had already been made, Jones could not declare the contract as being in default. Second, it is undisputed that there was no contractual provision or extemporaneous oral agreement for the payment of late fees. Therefore, Jones was not entitled to the $2,000 and could not terminate the contract on this basis.

The default notice also alleges that Addesha failed to comply with state laws applicable to the use and occupancy of the property. Specifically, Jones contends that Addesha failed to remove a door from an abandoned refrigerator and failed to install a septic tank. However, the contract does not contain any provision requiring Addesha to maintain the mill site in compliance with state laws or that Addesha must install a septic tank. Therefore, Addesha's failure to do so is not a breach of the contract.

Jones additionally contends that Addesha allowed the mill site to fall into disrepair and therefore the contract should be terminated on the ground of waste. Aside from the fact that waste is not a specific basis for terminating the agreement, the contract does not impose the obligation on Addesha of maintaining the mill. The contract only provides that Addesha is responsible for maintaining any improvements or alterations made on the property by Addesha. As to existing improvements, the contract is silent. Nevertheless, even if Addesha had the affirmative duty to maintain the mill, the district court heard testimony that Addesha had invested $13,500 in excess of

the contract price for improving and working the mill sites. Therefore, there appears to be substantial evidence to support the district court's finding that Addesha had not committed waste and that the contract was not breached.

The next ground for default alleged by Jones was that Addesha removed equipment and personal property from the mill sites. In the second full paragraph on page 6 of the contract, Addesha covenants not to remove personal property from the land. Nevertheless, the remedy established in the contract for removing personal property is to require Addesha to replace the items with articles of like utility and value, not default. Since Jones did not pray for damages for any alleged removal, and since the mere removal of personal property is not a ground for default, the district court properly found against Jones on this issue.

The last allegation of default is the failure of Addesha to provide proof of insurance. Although Addesha is required to provide fire insurance, the failure to do so is not a basis for terminating the agreement listed in the contract. Moreover, the failure to provide insurance may have been viewed by the district court as a minor breach of the contract, not sufficient to allow the termination of the entire agreement.

In reviewing the allegations of default, the district court appears to be correct in concluding that there was no proper basis on which to declare the contract in default. The district court must therefore be affirmed.